IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEREMY GUSLOFF,

                Plaintiff,

v.                                             21-cv-662-wmc

QUINCY BIOSCIENCE HOLDING
COMPANY, INC.,

                Defendant.

STANDING ORDER RELATING TO THE DISCOVERY OF ELECTRONICALLY
STORED INFORMATION IN A COMPLEX CIVIL LAWSUIT

Due to the predicted scope and complexity of discovery related to electronically stored information (ESI) in this lawsuit, IT IS ORDERED that every person and entity participating in ESI discovery in this lawsuit–including the parties, their attorneys, experts and other consultants–and shall comport with the Principles Relating to the Discovery of Electronically Stored Information. Relief from any of these principles or procedures shall be by leave of court.

**GENERAL PRINCIPLES**

**1.01: Purpose**

The purpose of these Principles is to secure the just, speedy, and inexpensive determination of this matter, and whenever possible to promote the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without court intervention. Understanding of the feasibility, reasonableness, costs, and benefits of various aspects of electronic discovery inevitably will evolve as judges, attorneys and parties to litigation gain more experience with ESI and as technology advances.

**1.02: Cooperation**

An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of the parties, their attorneys, experts or consultants to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and is subject to sanction.

**1.03: Discovery Proportionality**

The parties shall apply the proportionality standard of Fed. R. Civ. P. 26(b)(2)(C) in this case when, modifying and implementing a discovery plan. To further the application of this proportionality standard, requests for production of ESI and related responses must be reasonably targeted, clear, and as specific as practicable.

**2.01: Duty to Meet and Confer on Discovery and To Identify Disputes for Early Resolution)**

(a) As soon as possible but not later than 21 days after entry of this order in this case, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case. Among the issues to be discussed are:

(1) The identification of relevant and discoverable ESI and documents, including methods for identifying an initial subset of sources of ESI and documents that are most likely to contain the relevant and discoverable information as well as methodologies for culling the relevant and discoverable ESI and documents from that initial subset (see Principle 2.05);

(2) The scope of discoverable ESI and documents to be preserved by the parties;

(3) The format(s) for preservation and production of ESI and documents;

(4) The potential for conducting discovery in phases or stages as a method for reducing costs and burden; and

(5) The need for a protective order and any procedures to which the parties might agree for handling inadvertent production of privileged information and other privilege waiver issues pursuant to F. R. Ev. 502(d) & (e).

(b) Disputes regarding ESI procedures that the parties are unable to resolve shall be presented to the court in as soon as possible thereafter.

(c) The attorneys for each party shall review and understand how their client's data is stored and retrieved before the meet and confer discussions in order to determine what issues must be addressed during the meet and confer discussions.

(d) If the court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is otherwise impeding the purpose of these Principles, then the court may impose sanctions.

**2.02: E-Discovery Liaison(s)**

In many cases, the meet and confer process will be aided by participation of an e-discovery liaison(s) as defined in this Principle. In the event of disputes concerning the preservation or production of ESI, each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject. Regardless whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

>  (a) be prepared to participate in e-discovery dispute resolution;
> 
>  (b) be knowledgeable about the party's e-discovery efforts;
> 
>  (c) be familiar with, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and
> 
>  (d) be knowledgeable about, or have reasonable access to those who are knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**2.03: Preservation Requests and Orders**

(a) Appropriate preservation requests and preservation orders further the goals of these Principles. Vague and overly broad preservation requests do not further the goals of these Principles and are disfavored. Vague and overly broad preservation orders should not be sought and shall not be entered. The information sought to be preserved through the use of preservation letter requests or orders must be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b) ESI preservation requests should attempt to ensure the preservation of relevant and discoverable information and facilitate cooperation between requesting and receiving counsel and parties by setting forth specific, useful information. Examples of specific and useful information include, but are not limited to:

>  (1) The names of parties;

  (2) Factual background of the potential legal claim(s) and identification of potential cause(s) of action;

  (3) Names of potential witnesses and other people reasonably anticipated to have relevant evidence;

  (4) Relevant time period(s); and

  (5) Other information that may assist the responding party in assessing what information to preserve.

(c) If the recipient of a preservation request chooses to respond, that response should provide the requesting party with specific, useful information regarding the preservation efforts undertaken by the responding party. Examples of specific, useful information include, but are not limited to, information that:

  (1) identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

  (2) identifies any disagreement(s) with the request to preserve; and

  (3) identifies any further preservation issues that were not raised.

(d) Nothing in these Principles shall be construed as *requiring* any party to send a preservation request or to send a response to such a request.

**2.04: Scope of Preservation**

(a) Each party and its attorneys shall take all reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control. Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that varies with each case, with the court as the final arbiter. The parties and their attorneys should address preservation issues at the outset of a case, and should continue to address preservation issues as the case progresses and their understanding of the issues and the facts evolves.

(b) Discovery directed toward another party's preservation and collection efforts might be appropriate, but when propounded unadvisedly, it causes unnecessary expense and delay and it may implicate attorney work product and the attorney-client privilege. Accordingly, prior to initiating such discovery, a party shall confer with the party from whom the information is sought to discuss:

(i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c) At the ESI meet and confer session, the parties must be prepared to discuss reasonably foreseeable preservation issues that relate directly to the information that the other party anticipates requesting, such as claims, defenses, the time frame, potential damages, and other foreseeable discovery. The parties need not raise every conceivable issue that may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d) The following categories of ESI generally are not discoverable; if any party intends to request preservation or production of these categories of ESI, then that intention should be discussed at the meet and confer session or as soon thereafter as practicable:

  (1) "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

  (2) random access memory (RAM) or other ephemeral data;

  (3) on-line access data such as temporary internet files, history, cache, cookies, etc.;

  (4) data in metadata fields that are frequently updated automatically, such as last-opened dates;

  (5) backup data that is substantially duplicative of data that is more accessible elsewhere; and

  (6) other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

(e) If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C). If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

**2.05: Identification of ESI**

(a) not later than three weeks after entry of this order in this case, the parties shall discuss potential methodologies for identifying ESI for production.

(b) Topics for discussion may include, but are not limited to, any plans that:

    (1) eliminate duplicative ESI And whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

    (2) filter data based on file type, date ranges, sender, receiver, custodian, search terms, or other similar parameters; and

    (3) use keyword searching, mathematical or thesaurus-based topic or concept clustering, or other advanced culling technologies.

**2.06: Production Format**

(a) The parties must make good faith efforts to agree on the format(s) for ESI production (whether native or some other reasonably usable form). If the parties cannot resolve a production format issue, then they must promptly raise this dispute with the Court.

(b) The parties should discuss whether ESI stored in a database or a database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting counsel or party.

(c) ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(d) Generally, the requesting party is responsible for the incremental cost of creating its copy of requested information. The parties are encouraged to discuss cost-sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

Entered this 21st day of January, 2022,

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge