IN THE UNITED STATES DISRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**JEREMY GUSLOFF**,
individually and on behalf of
all those similarly situated,

Case No. 21-cv-662-wmc

Plaintiff,

v.

**QUINCY BIOSCIENCE HOLDING COMPANY, INC.**,

Defendant.

**BRIEF IN SUPPORT OF JOINT MOTION FOR COURT APPROVAL OF
SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE**

This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§ 201 *et seq.* and the Wisconsin Wage Payment and Collection Act, Wis. Stat. § 109.01 *et seq.* The parties have reached a settlement. Pursuant to that settlement, in exchange for a monetary payment, Plaintiff Jeremy Gusloff (Plaintiff) and the two other individuals who have opted into the putative FLSA collective, Drew Haack and Cole Jordan (Opt-in Plaintiffs; collectively with Gusloff, Plaintiffs), are required to dismiss their claims with prejudice and release Defendant Quincy Bioscience Holding Company, Inc., along with its related entities (collectively Quincy Bioscience) from liability. This settlement is a fair and reasonable resolution of disputed issues, which will result in significant payment to the Plaintiffs in exchange for the release of their claims. Because the parties believe this settlement represents a fair result for the Plaintiffs, they seek this Court's approval of the settlement agreement, an award of

$7,000 in attorney fees and costs to Plaintiffs' counsel, and dismissal of this action with prejudice.[1]

## I. Factual and Procedural Background

Defendant Quincy Bioscience Holding Company, Inc. is a research-based biotechnology company operating in the state of Wisconsin. (Zoeller Decl. ¶ 2.) Quincy Bioscience employed sales representatives in the state of Wisconsin. (Dkt. No. 9, ¶¶ 4, 5.) Gusloff alleges that Quincy Bioscience improperly calculated the regular rate of pay when determining overtime wages by failing to include commission payments in its computation of the regular rate of overtime pay to the collective class members. (Dkt. No. 1.)

On October 19, 2021, Gusloff filed a lawsuit under the FLSA and under Wisconsin wage-and-hour law as a putative collective and class action to recover unpaid overtime wages. (Dkt. No. 1.) In his complaint, Gusloff alleged that Quincy Bioscience failed to pay overtime wages to him and other similarly situated individuals for a period dating back to October 19, 2018. (*Id.*) The parties immediately engaged in discussion to attempt to resolve these claims, and the parties stipulated to an extension to the deadline to answer the Complaint to allow the parties to focus on these efforts. (Dkt. No. 6.) A total of three individuals, including Gusloff, filed consent forms to opt into the FLSA collective. (Dkt. Nos. 1.1, 11 and 12.)

---

[1] The settlement agreement is among only the three individuals who have opted into the FLSA collective and Quincy Bioscience. Individuals who have not opted into the FLSA collective are not subject to or bound by the settlement agreement.

The parties agreed to explore whether it would be possible to resolve this matter without further litigation. (Zoeller Decl. ¶ 3.) After Gusloff filed his complaint, but before the parties had reached an agreement on terms of settlement, Quincy Bioscience conducted an internal audit of the wages it had paid the members of the putative collective and putative class. (Piefer Decl. ¶ 3.) Quincy conducted this audit of its own volition, with no prompting by Plaintiffs' counsel. (Zoeller Decl. ¶ 4.) Each employee's regular rate of pay was determined by adding commissions earned by the employee during a particular week, if any, to the employee's hourly wages earned during that week, and then dividing the total wages earned by the total hours worked. (Piefer Decl. ¶ 3.) The regular rate of pay was multiplied by 50% to determine the overtime premium, if any, for each hour worked in excess of 40 during that week. (*Id.*) The total hours worked in excess of 40 during a particular week, if any, were multiplied by the applicable overtime premium to determine the overtime wages due, if any, for the week. (*Id.*) After conducting this audit, Quincy Bioscience made payments to members of the putative collective and putative class, including Plaintiffs, as described in Section 3 of the proposed settlement agreement. (*Id.*)

After Quincy Bioscience made these payments, counsel engaged in arm's-length, good-faith settlement negotiations on behalf of their clients in light of the disputed issues remaining to be resolved, the expense of continued litigation, and the inherent risks of litigation. (Zoeller Decl. ¶ 5.; Piefer Decl. ¶ 4.) The parties agreed that in addition to what Quincy Bioscience had already paid Plaintiffs under its wage audit, Quincy would pay an additional $5,000 to Gusloff and an additional $4,250 to

Haack and Jordan, to be divided between liquidated damages and payment for a global release of claims based on each Plaintiff's audited wages (see table below). (Zoeller Decl. ¶ 6.) As a result of these negotiations, counsel reached the proposed settlement agreement for which they now seek the Court's approval. (*Id.* ¶ 7.)

II.   **The Settlement is a Fair and Reasonable Compromise of Disputed Claims**

Under the proposed settlement (attached as **Exhibit A** to Zoeller Decl.), each of the Plaintiffs will be compensated for his alleged unpaid overtime (including liquidated damages under the FLSA), will receive additional compensation in exchange for a global release of claims, and will recover for attorney fees and costs incurred by their counsel in addition to their individual settlements. The settlement amounts are as follows:

| Collective Class Member | Jeremy Gusloff | Drew Haack | Cole Jordan |
|---|---|---|---|
| Audit Wages Already Paid | $1,642.72 | $2,383.18 | $288.46 |
| Additional Damages Already Paid | $1,857.28 | $0.00 | $0.00 |
| Liquidated Damages | $1,642.72 | $2,383.18 | $288.46 |
| Global Release of Claims | $3,357.28 | $1,866.82 | $3,961.54 |
| **TOTAL** | **$8,500.00** | **$6,633.18** | **$4,538.46** |

In all, each of the Plaintiffs will receive more than the full value of his alleged total potential damages if he were to prevail on all issues at trial, including a finding of willfulness that would extend the statute of limitations to the third year, and

including an award for the maximum amount of liquidated damages. (Piefer Decl. ¶ 5.) Attorney fees will be paid in addition to the damages awards and thus will not reduce these awards.

For a private settlement of FLSA claims to be enforceable, this Court and others have held that the settlement must be approved by the Department of Labor or a district court. *See, e.g., Butz v. Automation Sols. of Am., Inc.*, No. 16-cv-696-jdp, 2017 U.S. Dist. LEXIS 183851 (W.D. Wis. Nov. 7, 2017) (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986)). The standard for evaluating a proposed settlement of a claim under the FLSA is to determine whether it constitutes "a fair and reasonable resolution of a bona fide dispute"—in other words, whether the agreement is "a compromise of disputed issues" rather than "a mere waiver of statutory rights." *Id.* at *3 (internal quotation marks omitted).

This settlement is a fair and reasonable resolution of a *bona fide* dispute over the FLSA provisions at issue in this lawsuit. The parties have a real dispute in this case over whether the Plaintiffs were entitled to overtime wages and over whether the commissions received by the Plaintiffs should have been included in calculating their regular rates of pay. In addition, assuming that the Plaintiffs would have prevailed on these disputed questions, the appropriate remedies are also disputed: namely, whether the Plaintiffs would be able to demonstrate that Quincy Bioscience acted willfully in order to secure the third year of damages available under 29 U.S.C. § 255(a) or whether Quincy Bioscience acted in good faith and should not be liable for liquidated damages under 29 U.S.C. § 260.

Factors considered when reviewing settlement agreements for FLSA collective actions include "the range of reasonableness of the settlement fund in light of the best possible recovery [and] all the risks of litigation," such as the risks of establishing liability and damages. *Butz*, 2017 U.S. Dist. LEXIS 142614, at *3 (citing *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)). In this matter, each of the Plaintiffs will receive **more than** "the best possible recovery," even assuming that Plaintiffs had prevailed on every disputed question. Further, all attorney fees that Plaintiffs' counsel will receive under the proposed settlement are separate from the payments to the Plaintiffs, meaning there will be no reduction to their awards to account for fees and costs.

This settlement represents a reasonable compromise of Plaintiffs' claims, particularly in light of the contested issues in this matter. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to the risks and costs of trial); *Smoot v. Wieser Bros. Gen. Contr.*, 15-cv-424-jdp, 2016 U.S. Dist. LEXIS 57148 (W.D. Wis. April 28, 2016) (approving FLSA settlement where class members "will lose some of their liquidated damages to pay class counsel," which represented "only a modest compromise from the class members' point of view"); *contrast with Larkin v. CPI Corp.*, 10-cv-411-wmc, 2011 U.S. Dist. LEXIS 127680 (W.D. Wis. Nov. 3, 2011) (reserving judgment on plaintiff's motion for approval of FLSA settlement where parties provided insufficient information to allow court to evaluate reasonableness of settlement).

### III.    The Attorney Fees and Costs Sought Are Fair and Reasonable

Plaintiffs' counsel seeks an award of $7,000.00 in attorney fees and costs under the settlement agreement, supported by logs detailing the work performed by Plaintiffs' counsel on this case. These logs are attached as **Exhibit B** to the Declaration of David C. Zoeller. Plaintiffs' counsel represents that it has agreed to accept a fee award that will result in an effective hourly rate that is below their normal hourly rates, further evincing the reasonableness and arm's-length nature of the settlement. (Zoeller Decl. ¶¶ 14, 15.)

Plaintiffs' counsel has litigated this matter since its inception, including initial and subsequent case investigation, preparation of the complaint, legal research, preparation of damages calculations, extensive consultation with the Plaintiffs, preparation and service of discovery requests, preparing responses to Quincy Biosciences' discovery requests, and correspondence with defense counsel pertaining to settlement and this approval filing. (*See* Ex. B. to Zoeller Decl.) Plaintiffs' counsel accepted this case on a contingent fee basis and bore the risk of nonrecovery if the case did not lead to a successful resolution. (Zoeller Decl. ¶ 8.) Additionally, Plaintiffs' counsel has advanced $447.00 in costs, including the filing fee and service costs. (*Id.* ¶ 9.)

### CONCLUSION

The parties have reached a fair and reasonable settlement through arm's-length negotiations between experienced counsel. For the foregoing reasons, the parties ask the Court to enter an order approving the settlement agreement, awarding $7,000 in attorney fees and costs to Plaintiffs' counsel, and dismissing the

case with prejudice and without further costs to either party pursuant to Fed. R. Civ.

P. 41(a)(2).

Dated this 8th day of March, 2022.

> **HAWKS QUINDEL, S.C.**
> *Attorneys for the Plaintiff*
>
> By:   */s/David C. Zoeller*
> David C. Zoeller, State Bar No. 1052017
> Email: dzoeller@hq-law.com
> Aaron J. Bibb, State Bar No. 1104662
> Email: abibb@hq-law.com
> Post Office Box 2155
> Madison, Wisconsin 53701-2155
> Telephone: (608) 257-0040
> Facsimile: (608) 256-0236
>
> **LINDNER & MARSACK, S.C.**
> *Attorneys for the Defendant*
>
> By:   */s/Sally A. Piefer*
> Sally A. Piefer, State Bar No. 1023257
> Email: spiefer@lindner-marsack.com
> Samantha J. Wood, State Bar No. 1091367
> Email: swood@lindner-marsack.com
> 411 E. Wisconsin Ave., Suite 1800
> Milwaukee, Wisconsin 53202
> Telephone: (414) 273-3910
> Facsimile: (414) 297-9873