# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement" or "Settlement Agreement") is entered into by and between Quincy Bioscience Holding Company, Inc. ("Defendant") and Jeremy Gusloff ("Plaintiff"), Drew Haack and Cole Jordan ("Opt-in Plaintiffs") in relation to the case of *Gusloff v. Quincy Bioscience Holding Company, Inc.,* Case No. 21-cv-662-wmc, filed in the United States Court for the Western District of Wisconsin (the "Lawsuit"), (Plaintiff, Opt-in Plaintiffs, and Defendant each a "Party" and collectively the "Parties").

## RECITALS

**WHEREAS,** the Plaintiff filed the Lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and under Wisconsin wage-and-hour law as a putative collective and class action to recover alleged unpaid compensation and overtime wages against Defendants on October 19, 2021 (Dkt. No. 1); and

**WHEREAS,** the Plaintiff is represented in the Lawsuit by the law firm of Hawks Quindel, S.C. ("Plaintiff's Counsel"); and

**WHEREAS,** 2 additional individuals filed consent forms to join the putative collective class (the Opt-in Plaintiffs) (Dkt. Nos. 1.1, 11 and 12); and

**WHEREAS**, the collective FLSA class has not been conditionally certified by the Court; and

**WHEREAS,** counsel for the Parties have exchanged settlement offers and, by and through arm's-length negotiations, reached a settlement of this matter as to the Plaintiff and Opt-in Plaintiffs; and

**WHEREAS,** Defendant denies all of the allegations in the Lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit but, nonetheless, without admitting or conceding any liability or damages whatsoever; and

**WHEREAS,** the Parties have agreed to settle the Lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

**WHEREAS,** the Parties recognize that the outcome of the Lawsuit is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time and expense; and

**WHEREAS,** the Plaintiff and Plaintiff's Counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in the Settlement Agreement is in the best interest of the Plaintiff and Opt-in Plaintiffs and that the settlement provided in the Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

**NOW THEREFORE,** the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

1. **Settlement.** It is agreed by and among the Parties that this Lawsuit, and any claims, damages, or causes of action arising out of or related to the dispute which is the subject of said Lawsuit, be settled and compromised as between the Plaintiff and Opt-in Plaintiffs and Defendant, subject to Court approval and pursuant to the terms and conditions set forth in the Settlement Agreement.

2. **Attorneys' Fees and Costs.** Plaintiff's Counsel will apply for an award of actual attorneys' fees and costs, to be approved by the Court, not to exceed the sum of Seven Thousand Dollars ($7,000.00) ("Attorney's Fees"). Defendant does not oppose such application.

3. **Allocation to Plaintiff and Opt-in Plaintiffs.** The Plaintiff and Opt-in Plaintiffs shall be allocated the amounts described below. Individual claim values have been calculated for the Plaintiff and Opt-in Plaintiffs using the following method: First, Defendant conducted an internal audit to determine the amount paid to the Putative Collective Members, including the Plaintiff and Opt-in Plaintiffs, each week worked during the three-year statute of limitations period preceding the filing of this Lawsuit. The regular rate of pay was determined by allocating commissions earned to the particular workweek and adding commissions to the hourly wages earned. Next, total regular hour wages earned per workweek were divided by the total hours worked per workweek to determine the regular rate of pay, and this regular rate of pay was multiplied by 50% to determine the overtime premium for each hour worked in excess of 40, if any. The total hours worked in excess of 40 each workweek, if any, were then multiplied by that workweek's overtime premium to determine the overtime wages due per workweek, if any. The alleged overtime claim value for Plaintiff and Opt-In Plaintiffs was then increased by 100% to account for liquidated damages under the FLSA, and an additional sum was then added to secure a global release of claims from Plaintiff and Opt-In Plaintiffs. This process led to the following individual settlement amounts:

|  | Jeremy Gusloff | Drew Haack | Cole Jordan |
|---|---:|---:|---:|
| Audit Wages | $1,642.72 | $2,383.18 | $288.46 |
| Additional Damages | $1,857.28 | $0.00 | $0.00 |
| Liquidated Damages | $1,642.72 | $2,383.18 | $288.46 |
| Global Release of Claims | $3,357.28 | $1,866.82 | $3,961.54 |
| **TOTAL** | **$8,500.00** | **$6,633.18** | **$4,538.46** |

The Parties specifically understand that some of the payments described in the preceding table have already been paid by Quincy Bioscience to the Plaintiff and Opt-In Plaintiffs. Any additional amount paid by Quincy Bioscience to the Plaintiff and Opt-in Plaintiffs in the Settlement Agreement shall represent full payment of any wages and liquidated damages that could have been claimed through this Lawsuit, plus an additional amount to secure a full release of claims.

4. **Settlement Approval Process.** Plaintiff's Counsel shall present the Settlement Agreement to the Court along with a joint motion requesting that the Court issue an order approving the Settlement Agreement as fair, reasonable, and adequate and dismissing the Lawsuit with prejudice. Should the Court require additional briefing in order to grant approval of the Settlement Agreement, the Parties shall work cooperatively together to conclude settlement of the Lawsuit.

If the Settlement Agreement is fully approved by the Court, a final Order approving settlement and directing the entry of judgment pursuant to Federal Rule of Civil Procedure 41(a)(2) shall be entered (i) approving the Settlement Agreement as fair, reasonable, and adequate; (ii) dismissing with prejudice the Pending Lawsuit; and (iii) indicating the amount of attorneys' fees and expenses to be paid to Plaintiff's Counsel.

5. **Release.** Upon the Court entering an Order approving settlement, Plaintiff and Opt-in Plaintiffs shall be deemed to have released all of the following (collectively the "Released Claims"):

The Plaintiff and Opt-in Plaintiffs on behalf of themselves, their heirs, their personal representatives, successors and assigns, hereby irrevocably and unconditionally release and discharge fully and forever Quincy Bioscience, and any of its predecessors, successors, assigns, representatives, parents, subsidiaries, divisions, affiliates and all related companies, and their present and former officers, agents, directors, supervisors, attorneys, employees, owners and each and any one of them

and their heirs, executors, administrators, successors and assigns, and all persons acting by, through, under or in concert with any of them (hereinafter referred to collectively as "Releasees"), from any and all claims, demands and causes of action, whether presently known or unknown, which they had, now have, or may have against the Releasees, or any of them, for or by reason of any transaction, matter, cause or things whatsoever prior to the date of this Agreement, with respect to, or arising out of, their employment with Quincy Bioscience or the cessation thereof, and they further release and waive any claim or right to further compensation of any kind or attorneys' fees or costs from Quincy Bioscience or any of the Releasees, except as specifically provided in this Agreement.

The Plaintiff and Opt-in Plaintiffs fully understand that this release and the Released Claims specifically include, but are not limited to (a) any and all claims brought or which could have been brought in the Pending Litigation; (b) all claims relating to their employment with Quincy Bioscience and the cessation of that employment; (c) any claims related, directly or indirectly, to their employment with Quincy Bioscience whether based in tort, express or implied contract, or any federal, state or local law, statute or regulation, specifically including, but not limited to, any claim, demand or cause of action arising out of the Fair Labor Standards Act, the Equal Pay Act, the Ledbetter Fair Pay Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1986, the Employee Retirement Income Security Act (ERISA), the Americans with Disabilities Act, the Occupational Safety & Health Act, the National Labor Relations Act, the Labor Management Relations Act, the Wisconsin Fair Employment Act, Wis. Stats. § 103.455 and Chapter 109 of the Wisconsin Statutes, each as they may have been amended, and any other state or federal statute, law, rule, regulation or ordinance covering an employment relationship or restricting Quincy Bioscience's rights to terminate employees, and (d) all claims for breach of employment contract, wrongful discharge, and in addition, from any claims, demands or actions brought on the basis of personal injury, alleged wrongful discharge, breach of contract, misrepresentation, defamation, interference with contract or intentional or negligent infliction of emotional distress under the common law of any state. It is the intention of the Parties in executing this Agreement, that the release contained herein shall be effective as a bar to each and every claim described above, and shall cover claims known and unknown to the Plaintiff and Opt-in Plaintiffs as of the effective date of this Agreement. This Release does not apply to claims that may arise after the execution of this Agreement, claims for breach of this Agreement, or claims that may not be released under applicable law, such as rights to any accrued benefits under Quincy Bioscience retirement benefit plans.

6. **No Other Pay or Benefits.** Except as otherwise expressly provided in this Agreement, the Plaintiff and Opt-in Plaintiffs acknowledge that they are not entitled to any other wages, salary, vacation pay, bonuses, incentive awards, commissions, benefits or compensation of any kind. The Plaintiff and Opt-in Plaintiffs understand, acknowledge and agree that upon receipt of the consideration discussed in Section 3,

they have been fully compensated for all work performed for Quincy Bioscience and that they will not make any claims against Quincy Bioscience for any further type of compensation or remuneration of any kind.

7. **Future Employment.** The Plaintiff and Opt-in Plaintiffs agree that, by virtue of this Agreement, they are not entitled to, and will not knowingly seek or accept, reinstatement or reemployment by Quincy Bioscience and will not be reemployed by Quincy Bioscience from this time on and at any time into the future, and will not be eligible for and hereby waive any damages or relief of any kind if not reinstated or reemployed by Quincy Bioscience in the event they breach this provision. To the extent the Plaintiff and Opt-in Plaintiffs are awarded any such damages or relief, they hereby assign such award to Quincy Bioscience.

8. **Non-Admission.** It is understood and agreed that this is a compromise settlement of disputed claims and that nothing contained in the Settlement Agreement or the decision to enter into this Agreement shall be deemed or construed at any time or for any purpose as an admission of liability by Quincy Bioscience. Liability for any and all claim for relief is expressly denied by Quincy Bioscience.

9. **Non-Disparagement.** Plaintiff and Opt-in Plaintiffs agree they will not directly or indirectly make any statements or remarks, written or verbal, or post on any Internet or social media site, or cause or encourage others to make any statements, written or verbal, which defame, disparage, criticize or have the potential of harming Quincy Bioscience and/or its successors, and its respective agents, servants, officers, directors and employees and their reputations. Anthony Kern and the immediate supervisors of Plaintiff and Opt-in Plaintiffs will not make any statements or remarks, written or verbal, or post on any Internet or social media site, or encourage others to make any statements, written or verbal, which defame, disparage, criticize or have the potential of harming the Plaintiff and Opt-in Plaintiffs. So long as the Plaintiff and Opt-in Plaintiffs direct employment inquiries from prospective employers to Anthony Kern, Quincy Bioscience agrees to respond by providing dates of employment and last job title held with Quincy Bioscience. Notwithstanding the foregoing, nothing in this Agreement shall prohibit either Party from making truthful statements or disclosures that are required by applicable law, regulation or legal process or in requesting or receiving confidential legal advice.

10. **Settlement Administration.**

      a. **Allocations.** Individual settlement allocations have been calculated pursuant to the procedure described in Section 3 and in the amounts set forth in Section 3. The amounts allocated to the Plaintiff and Opt-in Plaintiffs in Section 3 as "Audit Wages," "Additional Damages" and "Global Release of Claims" shall, to the extent not already paid, be paid subject to applicable employment

withholding as W-2 income, and the amounts allocated to the Plaintiff and Opt-in Plaintiffs as "Liquidated Damages" shall be paid as 1099 income.

    b. **Funding of the Settlement and Payment of Attorneys' Fees and Tax Treatment**. Within 10 days of the Court entering its order approving the Settlement Agreement, Defendant shall transfer checks representing Liquidated Damages, Global Release of Claims and Attorney's Fees to Plaintiff's Counsel. In due course, Defendant will issue (i) Plaintiff's counsel an IRS Form 1099 representing the Attorney's Fees, (ii) the Plaintiff and Opt-in Plaintiffs IRS Forms 1099 representing payment for Liquidated Damages, and (iii) the Plaintiff and Opt-in Plaintiffs IRS Forms W-2 representing payment for Global Releases of Claims. Plaintiff's Counsel will mail checks to Plaintiff and Opt-in Plaintiffs no later than 14 days from receipt of the checks from Defendant.

   11. **Confidentiality.** This Agreement is confidential, and confidentiality is a material term of this Agreement. Each Plaintiff and Opt-in Plaintiff represents that he will not disclose (and has not disclosed) the terms, amount, or existence of this Agreement to anyone other than to the Court; his spouse, partner, and parents; or his legal, financial, and tax advisors (collectively Excepted Persons). Each Plaintiff and Opt-in Plaintiff further represents that before disclosing any information about this Agreement to any Excepted Person, he will inform that Excepted Person that this Agreement is confidential and will obtain that Excepted Person's agreement to maintain the confidentiality of this Agreement. Any Excepted Person's violation of this confidentiality requirement is to be treated as a violation by such Plaintiff or Opt-In Plaintiffs as the case may be. In any future response to an inquiry about the Lawsuit, each Plaintiff and Opt-In Plaintiff shall say only that "The case has been closed" and make no further comment or otherwise indicate, directly or indirectly, any further information about the Lawsuit or this Agreement.

   12. **No Prevailing Party Designation**. The Parties agree that this Agreement shall not be construed to render the Plaintiff or Opt-in Plaintiffs as a "prevailing party" within the meaning of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, the Rehabilitation Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974 (ERISA), the Wisconsin Fair Employment Act or any other laws of the State of Wisconsin or under federal law, each as they have been amended, or under any law, statute or ordinance allowing attorneys' fees and/or costs to a party who "prevails" in any manner or sense, nor shall this Agreement be deemed to constitute a factor supporting an award of attorneys' fees and/or costs under any law, statute or ordinance. Except as expressly provided herein, the Parties are responsible for their own attorneys' fees and costs in connection with the presentation and resolution of their disputes, including the Lawsuit.

   13. **Choice of Law**. The enforcement of the Settlement Agreement shall be governed by and interpreted under the laws of the State of Wisconsin whether or not

any Party is or may hereafter be a resident of another state. The Parties irrevocably and exclusively submit to the jurisdiction of the United States District Court for the Western District of Wisconsin over any dispute arising out of or relating to this Agreement. If the United States District Court for the Western District of Wisconsin determines that it lacks jurisdiction to hear any dispute arising under this agreement, the Parties agree that they will irrevocably and exclusively submit to the jurisdiction of the Dane County Circuit Court in Dane County, Wisconsin. The Parties irrevocably waive, to the fullest extent permitted by applicable law, any objection which the Parties may now or hereafter have to the laying of venue of such dispute brought in these courts or any defense of inconvenient forum in connection therewith.

14. **Extension of Time**. The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in the Settlement Agreement, without further notice to the Court, subject to Court approval as to Court dates.

15. **No Waivers, Modifications, Amendments**. The Settlement Agreement constitutes the entire agreement of the Parties concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into the Settlement Agreement. No waiver, modification, or amendment of the terms of the Settlement Agreement, whether purportedly made before or after the Court's approval of the Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of the Settlement Agreement.

16. **Court Retains Jurisdiction to Enforce Agreement**. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement to the extent permitted by law.

17. **Agreement to Cooperate**. The Parties acknowledge that it is their intent to consummate this settlement, and they agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

18. **Acknowledgments**. Each Plaintiff and Opt-in Plaintiff represents and agrees that he (a) has carefully read and fully understand all of the provisions of this Agreement; (b) to the extent desired, has had ample opportunity to consult with counsel about the terms of this Agreement;  (c) understands that this Agreement

includes a final general release and that he can make no further claims against Quincy Bioscience or any Releasee, except as otherwise provided herein; and (d) is knowingly and voluntarily entering into this Agreement.

19. **Severability.** The provisions of the Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

20. **Complete Agreement**. This Agreement contains the complete agreement between the Parties with respect to the subject matter hereof and supersedes any prior agreements or negotiations. This Agreement may be modified only by written mutual consent of the Parties.

21. **Counterparts**. The Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval. The Parties may execute the Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiff and Defendant had signed the same instrument. Any signature made and transmitted by facsimile or electronically for the purpose of executing the Settlement Agreement shall be deemed an original signature for purposes of the Settlement Agreement and shall be binding upon the signing Party.

22. **Corporate Signatories**. Each Party executing the Settlement Agreement warrants that such person has the authority to do so. Any person executing the Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all Parties hereto that such person is duly authorized by such corporation to execute the Settlement Agreement.

23. **Captions**. The captions or headings of the paragraphs in the Settlement Agreement are inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of the Settlement Agreement.

The remainder of this page intentionally left blank. Signature page follows.

JEREMY GUSLOFF

Date: March _____, 2022  _____

DREW HAACK

Date: March _____, 2022  _____

COLE JORDAN

Date: March _____, 2022  _____

QUINCY BIOSCIENCE HOLDING COMPANY, INC.

Date: March _____, 2022  By: _____
　　　　　　　　　　　　　　　Printed Name:_____
　　　　　　　　　　　　　　　Title:_____

REVIEWED AND APPROVED AS TO FORM:

HAWKS QUINDEL, S.C.
Counsel for Plaintiff

Date: March _____, 2022  By:_____
　　　　　　　　　　　　　　　Aaron J. Bibb, SBN 1104662

LINDNER & MARSACK, S.C.
Counsel for Defendants

Date: March _____, 2022  By: _____
　　　　　　　　　　　　　　　Sally A. Piefer, SBN 1023257

00904356　　　　　　　　　　　　　9